1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BRIAN OLSEN,

               Plaintiff(s),

v.

HENDERSON, et al.,

               Defendant(s).

2:12-CV-543 JCM (PAL)

**ORDER**

Presently before the court is defendants City of Boulder's and Aaron Johnson's (collectively "Boulder City defendants") motion for summary judgment.  (Doc. # 34).  Plaintiff Brian Olsen has filed a response (doc. # 38) and defendants have filed a reply (doc. # 41).

Also before the court is defendants City of Henderson's and Wayne Nichols' (collectively "Henderson defendants") motion for summary judgment (doc. # 35).  Plaintiff has filed a response (doc. # 39) and defendants have filed a reply (doc. # 43).

**I.     Background**

This matter arises from the investigation and subsequent arrest of Brian Olsen by detectives from the Henderson and Boulder City police departments.

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

1    During the period relevant to the events giving rise to this lawsuit, Olsen was a cosmetology

2    student at the Euphoria Institute in Henderson.  According to Olsen, he was the only male student

3    amongst approximately 180 to 200 women at Euphoria.  One of his fellow students (and the alleged

4    victim in the underlying criminal investigation) was a classmate by the name of Jessica Saur.

5    In March 2010, Olsen was a "freshman" at the institute.  At that time, he did not own a cell

6    phone.  According to Olsen, he would frequently borrow his classmates' cell phones (with their

7    permission) in order to make personal phone calls.

8    On March 9, 2010, Olsen borrowed Saur's cell phone in order to make a call.  According to

9    Olsen, he attempted to call his father and immediately returned the phone to Saur without using it

10    for any other purpose.  According to defendants, Olsen went through the photo album in Saur's

11    phone, located two nude photos of Saur, and sent those two photos to his own e-mail address using

12    Saur's phone.  Some time later, Saur became aware that the pictures had been sent and reported the

13    incident to the Henderson police department.

14    Detective Wayne Nichols was assigned to the case.  Nichols conducted an investigation,

15    which included interviews of both Olsen and Saur, he obtained call logs for Saur's phone, obtained

16    the subject e-mails, and spoke to classmates at Euphoria.  Nichols concluded that probable cause

17    existed to arrest Olsen for violating NRS 200.604 which makes "capturing [an] image of private area

18    of another person; distributing, disclosing, displaying, transmitting or publishing image of private

19    area of another person" a crime.

20    Because Olsen lived in Boulder City at the time, Nichols placed a phone call to the Boulder

21    City police department requesting assistance in picking Olsen up.  Boulder City detective Aaron

22    Johnson was contacted and went to Olsen's home to effectuate the arrest.  Johnson arrested Olsen

23    without a warrant, relying on his conversation with Nichols.[1]  Johnson transported Olsen to Railroad

24    Pass (the jurisdictional dividing line between Henderson and Boulder City) and turned Olsen over

25    into Nichols' custody.

26

27    _____

28        [1]  Olsen was compliant, has not argued that he was threatened or otherwise coerced into leaving his home, and
     indicated to Johnson that he knew why Johnson was there.

**James C. Mahan**
**U.S. District Judge**

The Henderson district attorney's office ultimately declined to prosecute the case. According to Nichols, this decision was made because he was unable to obtain conclusive proof, via a subpoena served on Google, that Olsen physically opened the pictures on his device. Olsen was thereafter released.

Olsen filed an amended complaint containing causes of action for (1) violation of his Fourth Amendment right to be free from an unlawful arrest, brought pursuant to 42 U.S.C. § 1983; (2) a *Monell* claim against the Henderson and Boulder City police departments based on inadequate training; (3) intentional infliction of emotional distress; (4) false imprisonment; and (5) malicious prosecution.

**II.    Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    fails to meet its initial burden, summary judgment must be denied and the court need not consider

2    the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

3        If the moving party satisfies its initial burden, the burden then shifts to the opposing party

4    to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

5    *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

6    party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

7    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

8    of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

9    Cir. 1987).

10       In other words, the nonmoving party cannot avoid summary judgment by relying solely on

11   conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045

12   (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

13   pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

14   for trial.  *See Celotex Corp.*, 477 U.S. at 324.

15       At summary judgment, a court's function is not to weigh the evidence and determine the

16   truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*,

17   477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable

18   inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving party is

19   merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at

20   249–50.

21   **III.    Discussion**

22       The viability of plaintiff's second through fifth causes of action hinges on the success of his

23   first claim, for unlawful arrest.  Because the court finds that probable cause existed, the remaining

24   dependant claims will not be addressed.

25       1.  Unlawful arrest brought pursuant to 42 U.S.C. § 1983

26       Plaintiff's first claim is for a violation of the Fourth Amendment based on an alleged

27   unlawful arrest.  Plaintiff asserts that probable cause did not exist to arrest him, and therefore

28

James C. Mahan
U.S. District Judge

1    Nichols is liable under § 1983.

2           Probable cause exists when the acts and circumstances within the arresting officer's

3    knowledge are sufficient to warrant a prudent person to believe that a suspect has committed, is

4    committing, or is about to commit a crime.  *U.S. v. Puerta*, 982 F.2d 1297, 1300 (9th Cir. 1992).

5           The threshold question, therefore, is whether the facts and circumstances known to Nichols

6    at the time of arrest were sufficient to suspect that Olsen had committed a crime.  This question is

7    easily answered by pointing to following undisputed facts known to Nichols at the time of the arrest:

8           •     Olsen and Saur were classmates at the time of the incident.  (Doc. #34-1, exh. A,

9                 deposition of Brian Olsen, p. 12, ln. 17-18).

10          •     On March 9, 2010, Saur permitted Olsen to borrow her cell phone.  (*Id.* at p. 22, ln.

11                8-12).

12          •     Olsen left the classroom in order to make a phone call to his father.  (*Id.* at p. 23, ln.

13                6-7).

14          •     Olsen did in fact use Saur's cell phone at that time.  (*Id.* at p. 23, ln. 6-7).

15          •     Olsen told Nichols that he had attempted to call his father at least three times using

16                Saur's phone.  (Doc. # 35-1, declaration of arrest, p. 3).

17          •     Records for Saur's phone, obtained by Nichols, reflected that no calls were made to

18                Olsen's father's number on March 9, 2010.  (Doc. # 43, ex. A, affidavit of Wayne

19                Nichols, p. 10, ¶ 63).

20          •     The nude pictures were sent to Olsen's e-mail address.   (Doc. #34-1, exh. A,

21                deposition of Brian Olsen, p. 26, ln. 23-25, p. 27, ln. 1-2).

22          •     The pictures were sent on March 9, 2010, at 3:01 p.m. and 3:04 p.m., as reflected by

23                the time stamp associated with the e-mails.  (Doc. # 43, ex. A, affidavit of Wayne

24                Nichols, p. 4, ¶ 26).

25          •     This is the time frame Saur indicated that she permitted Olsen to use her phone.  (*Id.*,

26                p. 5, ¶ 28).

27    •     . . .

28

James C. Mahan
U.S. District Judge                                        - 5 -

- • Olsen had never given Saur his e-mail address. (Doc. #34-1, exh. A, deposition of Brian Olsen, p. 14, ln. 17-15, p. 15, ln. 1-5).

- • The two pictures were each sent separately, and the e-mails did not contain any text in the body or on the subject line. (*Id.* at p. 27, ln. 1-11).

- • Neither Olsen nor Saur ever acknowledged the pictures to one another. (*Id.* at p. 29, ln. 17-24).

- • Olsen and Saur did not have contact outside of class. (*Id.* at p. 33, ln. 1-19).

- • Olsen and Saur had never communicated via text, e-mail, or phone call. (*Id.*).

- • Saur herself brought the incident to the attention of the police. (Doc. # 43, ex. A, affidavit of Wayne Nichols, p. 1, ¶ 4).

These undisputed facts were more than sufficient to warrant a prudent person to conclude that Olsen had committed a crime. *See Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006)("Police must only show that, under the totality of the circumstances, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime.")(internal citations and quotations omitted). As such, probable cause existed.

Olsen first argues that cases based on violations of constitutional rights are inappropriate for summary judgment, because police misconduct almost always turn on a jury's credibility determinations. This is incorrect. *See Hart*, 450 F.3d 1059 (affirming district court's grant of summary judgment as to the existence of probable cause). This argument is rejected.

Olsen's primary argument is apparently one of statutory interpretation. The offense for which Olsen was arrested, NRS 200.604, provides in relevant part:

1. Except as otherwise provided in subsection 4, a person shall not knowingly and intentionally capture an image of the private area of another person:

   (a) Without the consent of the other person; and

   (b) Under circumstances in which the other person has a reasonable expectation of privacy.

2. Except as otherwise provided in subsection 4, a person shall not distribute, disclose, display, transmit or publish an image that the person knows or has reason to know was made in violation of

1
subsection 1.

2
. . .

3
8.  As used in this section:

4
(a) "Broadcast" means to transmit electronically an image with the intent that the image be viewed by any other person.

5
(b) "Capture," with respect to an image, means to videotape, photograph, film, record by any means or broadcast.

6

7
. . .

8
NRS 200.604.

9
Plaintiff's statutory argument can be summarized as follows: Olsen did not "capture" the

10
images because he did not take them himself, and Saur did not have a reasonable expectation of

11
privacy with respect to the images.  Therefore, according to plaintiff, essential elements of the charge

12
are missing and probable cause did not exist.  This argument is unpersuasive.

13
First, no defendant has claimed that Olsen personally took the photos.  In fact, Nichols

14
testified in his deposition that it appeared Saur had taken the pictures of herself using a mirror.  This

15
fact is irrelevant in any event, because plaintiff ignores the statute's definition of "broadcast."

16
Broadcast "means to transmit electronically an image with the intent that the image be viewed by

17
any other person." NRS 200.603(8)(a).  In addition, "capture" includes any means of broadcasting.

18
NRS 200.603(8)(b).  Based on the aforementioned facts gathered from the investigation, it was

19
clearly reasonable for Nichols' to deduce that Olsen had transmitted (or "broadcasted") the images

20
from Saur's phone to his own device with the intent the images be viewed by another person.

21
Second, despite plaintiff's assertion to the contrary, Saur did have a reasonable expectation

22
of privacy with respect to the nude images of her.  Saur gave Olsen permission to borrow her phone

23
for the singular purpose of calling his father.  This did not give Olsen free rein to (allegedly) access

24
Saur's photo album, sort through "nearly 400 pictures," copy the two photos, and use Saur's phone

25
to e-mail them to himself.  Plaintiff's argument that if Saur didn't want Olsen to see the pictures, she

26
should not have allowed him to make a call is unavailing.

27
Finally, plaintiff's unsupported suggestion that every element of an offense requires specific

28

James C. Mahan
U.S. District Judge

1    evidence in order to support a finding of probable cause is simply unconvincing. *See, e.g., Edgerly*

2    *v. City & County of San Francisco*, 599 F.3d 946, 953 (9th Cir. 2010).  "The Constitution does not

3    guarantee that only the guilty will be arrested."  *Baker v. McCollan*, 443 U.S. 137, 144 (1979).

4    Probable cause only requires a "fair probability" that the arrested person has committed the crime

5    for which he is charged.  *United States v. Potter*, 895 F.2d 1231, 1233-34 (9th Cir. 1990).  In this

6    case, there was more than a fair probability that Olsen committed a violation of NRS 200.604.

7    **IV.    Conclusion**

8          Defendant Nichols had probable cause to arrest Olsen, and plaintiff's first cause of action

9    fails.  Because the remaining causes of action hinge on the success on the unlawful arrest claim,

10   summary judgment is also entered in defendants' favor as to those claims.

11         Accordingly,

12         IT IS HEREBY ORDERED, ADJUDGED, and DECREED that City of Boulder's and Aaron

13   Johnson's motion for summary judgment (doc. # 34) be, and the same hereby is, GRANTED.

14         IT IS FURTHER ORDERED that City of Henderson's and Wayne Nichols' motion for

15   summary judgment (doc. # 35) be, and the same hereby is, GRANTED.  The clerk shall enter

16   judgment accordingly and close the case.

17         DATED February 27, 2014.

18

19                                          _____
20                                          UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**